**Dr. Joseph T. SKEHAN, Appellant,**

v.

**BOARD OF TRUSTEES OF BLOOMS-
BURG STATE COLLEGE et
al., Appellees.**

**No. 73–1613.**

United States Court of Appeals,
Third Circuit.

Rehearing In Banc May 13, 1976.

Opinion on Remand from the Supreme
Court of the United States June
21, 1976.

Michael H. Gottesman, Dennis D. Clark, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., Harry Lore, Cohen & Lore, Philadelphia, Pa., for appellant.

J. Justin Blewitt, Jr., Deputy Atty. Gen., Norman P. D'Apolito, Lawrence Silver, Deputy Atty. Gen., Chief, Civ. Litigation, Robert P. Kane, Atty. Gen., Dept. of Justice, Harrisburg, Pa., for appellees.

OPINION ON REMAND FROM THE
SUPREME COURT OF THE
UNITED STATES

Before SEITZ, Chief Judge, and BIGGS, VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

GIBBONS, Circuit Judge.

This case is before us on remand from the Supreme Court. In August 1972 Joseph Skehan, formerly a non-tenured Associate Professor of Economics at Bloomsburg State College in Pennsylvania, sued in the district court seeking preliminary and permanent injunctive relief of reinstatement and back pay to that position, declaratory relief that his termination from the position was unconstitutional, punitive damages and attorney's fees. The defendants in the action were Bloomsburg State College; its Board of Trustees; Dr. Robert Nossen, its President; his successor to the presidency, Dr. Charles Carlson; and John Pittenger, Pennsylvania's Superintendent of Education.

The district court found that Skehan's one year employment contract was an interest in the nature of property; that its termination without an adequate hearing violated due process; and that the termination was not, as alleged, in retaliation for engaging in activity protected by the first amendment.[1] The court did not decide whether the college's prior decision not to renew Skehan's contract,[2] which had the effect of preventing him from achieving tenure, was made in reprisal for activities protected by the first amendment. Nor did it decide whether Skehan had a contractual right to a so-called "academic freedom" hearing prior to the college's decision not to renew his appointment.[3]

On appeal we affirmed the district court's determinations that the termination of Ske-

han's one year contract violated due process and that the termination was not in retaliation for the exercise of first amendment rights. We concluded that the court should have considered his claim that the non-renewal decision was so motivated, and should have decided his claim to a contractual "academic freedom" hearing prior to termination. We held that the individual defendants, exercising discretionary governmental functions, were immune from suits for money damages. We instructed the district court to determine whether the college was an entity as to which Pennsylvania asserted sovereign immunity. If the college did not share the Commonwealth's immunity, the district court was instructed to consider making an award of back pay and an award of attorney's fees. Otherwise it was to deny an award of back pay or attorney's fees.[4] Skehan filed a petition for certiorari. On May 27, 1975 the Supreme Court ordered that the judgment of this court be vacated and the case be remanded to this court for further consideration in light of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).[5] We decided to review the case in banc, and requested supplemental briefing. We now turn to a consideration of our prior decision in light of the Supreme Court's mandate.

## I. *Alyeska Pipeline Service Co. v. Wilderness Society*

■ We previously held that Skehan, as a private attorney general vindicating a

1. Skehan alleged in his complaint that the college terminated him for his controversial stand on political issues, and especially for his trenchant criticism of the Vietnam War. The district court found that Skehan had been fired for disregarding directives from the college administration relating to the scheduling of classes.

2. Skehan had been employed in January of 1969. This contract extended through the 1969–70 school year. In May, 1970 Skehan was notified that his contract would be renewed for the following academic year, but would not be renewed beyond that date. Skehan resumed his teaching duties for the termi-

nal year of his contract in September, 1970. President Nossen fired Skehan on October 19, 1970; the dismissal was confirmed by the Board of Trustees of the college on October 23.

3. *Skehan v. Board of Trustees of Bloomsburg State College*, 353 F.Supp. 542 (M.D.Pa.1973).

4. *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974).

5. *Skehan v. Board of Trustees of Bloomsburg State College*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

public interest in having state-related institutions act in compliance with the fourteenth amendment, was entitled to an award of attorney's fees from Bloomsburg State College provided the college did not share the sovereign immunity of the Commonwealth of Pennsylvania.[6] *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* overrules the cases on which we relied and which recognized that basis for the award of attorney's fees. It holds that absent (1) a contract or statute granting a right to attorney's fees; (2) the conferring of a common benefit by the recovery of a fund or property; (3) willful disobedience of a court order; or (4) a finding that the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons, federal courts must apply the American rule requiring each party to pay from his own pocket for the services of his attorney. Skehan points to no statute which would justify an award of attorney's fees,[7] but he urges that because primary emphasis was placed on the now-discredited but once-respectable private attorney general theory, we should still remand for appropriate findings by the district court on both the common benefit and bad faith exceptions to the American rule.

■ The common benefit theory will not avail Skehan in this case. While it is true that the public at large benefits from making public institutions act in accordance with the demands of due process, Skehan is not attempting to assess against those benefited members a fair share of the reasonable value of the attorney's services which created the benefit. *Compare Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 163 (3d Cir. 1973); *Merola v. Atlantic Richfield Co.,* 493 F.2d 292 (3d Cir. 1974); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974); *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975). Instead, he is attempting to charge the losing party for the reasonable value of attorney's fees which conferred that intangible benefit on an unascertainable class not within the court's jurisdiction. In *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Court applied the common benefit theory to justify a fee award for conferring a common but intangible benefit—the protection of first amendment rights. But there the Court could assess the fee against a union treasury, and thus shift the cost of litigation to an ascertainable class of union members who had been benefited. Skehan would have us analogize a union treasury to the treasury of the college. But the analogy between union dues in a union treasury and public funds in the college treasury is remote at best. Moreover, in *Hall v. Cole* it was quite clear who were the beneficiaries of increased union democracy and fairer operation of the union. In this case there would be no way of telling whether, if attorney's fees were assessed against the college, the cost would ultimately be borne by those parts of the college's several constituencies—students, faculty, and the taxpaying public—which actually benefited. We share Judge Wright's view that to apply the common benefit theory to assess attorney's fees against a losing party "would . . . stretch it totally outside its basic rationale . . . ." *Wilderness Society v. Morton,* 161 U.S.App.D.C. 446, 495 F.2d 1026, 1029 (1974) (en banc), *rev'd on other grounds sub nom., Alyeska Pipeline Service Co. v. Wilderness Society, supra.* To hold that we could charge the college for a common benefit to an undefined public would be to apply in other words the private attorney general theory which the *Alyeska* Court proscribed. And the inapplicability of the common benefit theory to an assessment of attorney's fees against the individual defendants is even more obvious. Thus we conclude that a

---

6. In Part III of this opinion we hold that Bloomsburg State College does enjoy the Commonwealth's immunity.

7. Skehan brings this action under the Civil Rights Act, 42 U.S.C. § 1983, and admits in his brief that this section does not allow for the recovery of attorney's fees. *See* Brief for Plaintiff-Appellant on Remand from the Supreme Court at 10.

remand for findings with respect to this theory is not appropriate.

■ Skehan also urges that on remand he would be able to show that all of the defendants, but in particular President Nossen, acted in bad faith, vexatiously, wantonly, or for oppressive reasons, states of mind which Skehan contends permit an award of attorney's fees under the American rule. The particular reference to Nossen, a prime mover in his termination but hardly a prime mover in carrying on this litigation, suggests the need for distinguishing between the bad faith which may have led to the termination of employment and bad faith, vexatiousness or oppression in litigating. It is the latter which comprises the predicate for the well-recognized fourth exception to the American rule on fee awards. The fee is awarded in the nature of costs for vexatiously bringing or maintaining an unfounded action or defense.[8] 6 J. Moore, Federal Practice ¶ 54.77[2], at 1079 (2d ed. 1974). It can hardly be said that on those issues on which the defendants have thus far prevailed the defense has been maintained in bad faith, vexatiously, wantonly or for oppressive reasons. Nor can we find evidence of oppressiveness in the defendants' response on appeal to those issues on which Skehan has been successful. On the other hand, since we are remanding and we cannot predict the future course of this litigation, we cannot foreclose consideration of the award of attorney's fees as costs based upon any lack of good faith in maintaining the litigation in the future.

■ Skehan, relying on *Vaughan v. Atkinson*, 369 U.S. 527, 530–31, 82 S.Ct. 997, 8 L.Ed.2d 888 (1962), urges that there is a fifth exception to the American rule, which allows the recovery of fees as an element of damages for pre-litigation vexation or oppression in resisting a just claim. In *Vaughan v. Atkinson*, a suit in admiralty for maintenance and cure and for injury from the withholding of maintenance and cure when it was due, the seaman could show no injury caused by the withholding of the payments other than the cost of attorney's fees in the suit. The Fourth Circuit, applying the American rule, refused to award fees as an item of compensatory damages.[9] The Supreme Court, with seven Justices participating and two dissenting, held that attorney's fees could be recovered as damages suffered for failure to pay maintenance. Authority for this departure from the American rule was found in *The Appollon*, 22 U.S. [9 Wheat.] 362, 6 L.Ed. 111 (1824), an admiralty suit for the recovery of damages for the illegal seizure of a vessel. Justice Story wrote:

> It is the common course of admiralty, to allow expenses in this nature [counsel fees], either in the shape of damages, or as part of the costs. 22 U.S. [9 Wheat.] at 379, 6 L.Ed. 111.

*Vaughan v. Atkinson* has frequently been cited in non-admiralty contexts. Since the ringing reaffirmation of the American rule in *Alyeska Pipeline Service Co. v. Wilderness Society, supra*, its authority in non-admiralty contexts is not entirely clear. We can glean something of the Court's attitude perhaps from the reference to the case in *F. D. Rich Co. v. Industrial Co.*, 417 U.S. 116, 129 n.17, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). There the text reads "We have long recognized that attorneys' fees may be awarded to a successful party when his

---

**8.** The Judiciary Act of 1789, 1 Stat. 73, gave federal courts discretionary authority to tax in favor of one party and against another expenses occasioned by delay in litigation. Section 22, governing the writ of error in civil actions, provided in part:

> "And every justice or judge signing a citation on any writ of error as aforesaid, shall take good and sufficient security, that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs if he fail to make his plea good."

1 Stat. 85.

Section 23 provided:

> "[A]nd whereupon such writ of error the Supreme [Court] or a circuit court shall affirm a judgment or decree, they shall adjudge or decree to the respondent in error just damages for delay, and single or double costs at their discretion."

*Id.* Cf. *The Perserverance*, 3 U.S. [3 Dall.] 336, 1 L.Ed. 625 (1797).

**9.** *Vaughan v. Atkinson*, 291 F.2d 813, 815 (4th Cir. 1961).

opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .", and the footnote cites *Vaughan v. Atkinson*, but also three circuit court non-admiralty cases[10] in which attorney's fees were awarded for pre-litigation obduracy or oppression in equitable actions. *Alyeska*, in turn, cites the *F. D. Rich Co.* reference to *Vaughan v. Atkinson* with approval. 421 U.S. at 259, 95 S.Ct. 1612. It would seem, then, that the *Vaughan v. Atkinson* exception to the American rule is not restricted to admiralty cases and survives *Alyeska. See Bond v. Stanton*, 528 F.2d 688 (7th Cir. 1976), *cert. granted,* —— U.S. ——, 96 S.Ct. 2224, 48 L.Ed.2d 829, 44 U.S.L.W. 3685 (1976) (No. 75–1413); *Thonen v. Jenkins*, 517 F.2d 3, 6 (4th Cir. 1975); *Handler v. San Jacinto Junior College*, 519 F.2d 273, 280 (5th Cir. 1975); *Class v. Norton*, 505 F.2d 123, 127 (2d Cir. 1974); *Taylor v. Perini*, 503 F.2d 899, 904 (6th Cir. 1974), *vacated on other grounds*, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975); Comment, Court Awarded Attorney's Fees and Equal Access to the Courts, 122 U.Pa.L.Rev. 636, 689 (1974); Note, Attorneys' Fees and the Eleventh Amendment, 88 Harv.L.Rev. 1875, 1882 (1975) (citing *Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)). *Compare Potter v. Gardner*, 30 U.S. [5 Pet.] 718, 725–27, 8 L.Ed. 285 (1831) (Baldwin, J., dissenting). Whether the facts of this case warrant its application against any of the defendants is a matter on which the district court should pass in the first instance.

One issue tendered to the Supreme Court by Skehan's petition for certiorari was whether the Commonwealth may be required to pay attorney's fees as part of an order granting prospective relief for violations of the fourteenth amendment.[11] The Court in the *Alyeska Pipeline* case did not purport to decide the question, *see* 421 U.S. at 269–70 n. 44, 95 S.Ct. 1612, and found it unnecessary to do so in its summary disposition of Skehan's petition for certiorari.

■ In our prior opinion we concluded that *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), precluded a private attorney general fee award against the college if under Pennsylvania law it was a state agency for which the Commonwealth claimed sovereign immunity. 501 F.2d at 42. In that opinion we were not dealing with a fee award against the Commonwealth for obduracy in carrying forward the defense of a weak case, an issue which, as we said above, may arise in the future course of this litigation. Although the issue is not free from doubt, it seems likely that since such an award is considered to be an award of costs, it would be governed by the established rule that state sovereign immunity is no bar to an award of costs. *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, 47 S.Ct. 506, 71 L.Ed. 893 (1927). A number of courts of appeals have allowed awards of attorney's fees against instrumentalities of the state on this ground. *See, e. g., Thonen v. Jenkins, supra*, 517 F.2d at 7; *Souza v. Travisono*, 512 F.2d 1137 (1st Cir.), *vacated on other grounds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *see also Gates v. Collier*, 522 F.2d 81 (5th Cir. 1975) (en banc) (per curiam), *on remand*, 78 F.R.D. 341, 44 U.S. L.W. 2405 (N.D.Miss.1976); *Taylor v. Perini, supra* (Edwards, J., dissenting). Since the obduracy ground for a fee award may still arise in this case, we hold that attorney's fees may be awarded as costs against a sovereign otherwise immune, if it pursues a bad faith, vexatious, wanton or oppressive course of litigation, but may not be awarded against an immune sovereign as damages because of pre-litigation obduracy on the authority of *Vaughan v. Atkinson*,

---

10. *McEnteggart v. Cataldo*, 451 F.2d 1109 (1st Cir. 1971); *Bell v. School Bd.*, 321 F.2d 494 (4th Cir. 1963); *Rolax v. Atlantic Coast Line R.R.*, 186 F.2d 473 (4th Cir. 1951); *McEnteggart v. Cataldo* is particularly significant since it involved the award of attorney's fees to a dismissed college teacher suing to obtain a statement of reasons for his dismissal.

11. *See* Petitioner's Brief for Certiorari at 2, *Skehan v. Board of Trustees of Bloomsburg State College*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474, 43 U.S.L.W. 3366 (1975).

*supra.*[12] We call to the district court's attention, however, that the issue of attorney's fee awards against a state is pending on certiorari in *Fitzpatrick v. Bitzer,* 519 F.2d 559 (2d Cir. 1975), *cert. granted,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 44 U.S.L.W. 3358 (1975). The opinion in that case, when it is decided, may require a decision at variance with our holding.[13]

■ Summarizing, the theory upon which we suggested that the district court could award attorney's fees—the private attorney general theory—has been foreclosed by *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* and the obduracy ground was not previously considered. We therefore remand this aspect of the case to the district court for additional findings on the obduracy issues.

## II. *Wood v. Strickland*

Skehan's petition for certiorari also tendered to the Supreme Court the question whether we applied a proper standard in determining that the individual defendants were immune from civil damage actions because of official immunity.[14] The mandate on remand directs us to reconsider that determination in light of *Wood v. Strickland, supra.* Upon such consideration we conclude that *Wood v. Strickland* significantly modified the law of immunity upon which we relied in affirming the district court, and that a remand for additional findings of fact is now required.

■ In our prior opinion we assumed that the Supreme Court had thus far interpreted 42 U.S.C. § 1983 as having left intact the existing common law respecting immunity from damage claims for actions arising out of the performance of duty of legislators, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), judges, *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and government officials. *See Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966) (en banc); *Fidtler v. Rundle,* 497 F.2d 794, 797–98 (3d Cir. 1974). We also assumed that federal law determines the scope of any such immunity when the defendant is charged with a federal statutory or constitutional wrong. *Fidtler v. Rundle, supra,* at 798–800. We recognized that not all government officials are at common law covered by official immunity. We held that whether or not a particular official enjoyed immunity for his conduct depended upon whether the action complained of was performed in the discharge of a discretionary governmental function. We also held that all defendants' actions of which Skehan complained occurred in the exercise of discretionary governmental functions. It

12. We held in our prior opinion in this case that *Edelman v. Jordan* had tacitly overruled the summary affirmance in *Amos v. Sims,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), of a fee award to be paid out of a state treasury. *See* 501 F.2d at 42–43 n. 7; *see also Alyeska Pipeline Service Co. v. Wilderness Soc'y, supra,* 421 U.S. at 270–71 n. 46, 95 S.Ct. 1612. The district court award in that case had been predicated upon both the private attorney general theory and the obduracy exception to the American rule. *See Sims v. Amos,* 340 F.Supp. 691, 693–95 (M.D.Ala.1972) (per curiam). It may therefore be argued that in view of this court's interpretation of *Edelman v. Jordan,* the theory of recovery upon which we remand this case to the district court is now foreclosed. In our previous opinion, however, the only question before us involved the effect of *Edelman v. Jordan* upon the private attorney general theory of recovery of attorney's fees from the state. We had no occasion to consider the impact of *Edelman v. Jordan* upon that aspect of *Amos v. Sims* recurring in this case—whether a fee award may be assessed as costs against a state that has vexatiously prolonged the course of litigation.

13. *Fitzpatrick* followed a prior Second Circuit decision, *Class v. Norton,* 505 F.2d 123, 126–27 (2d Cir. 1970), which permitted fee awards against the state. The court held that such an award was not barred by *Edelman v. Jordan* where it was a "necessary result of attempts to gain compliance with a decree which by its terms was prospective in nature," and had but an ancillary effect on the state treasury. *See also Souza v. Travisono, supra.* The court did not attempt to justify the fee award as an element of costs, so it is conceivable that the Supreme Court will decide the case on narrower grounds than are encompassed by this proceeding.

14. Petitioner's Brief for certiorari, *supra* note 11, at 2; 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 43 U.S.L.W. 3366.

was our view that if the governmental officials performing discretionary government duties acted within the scope of their official responsibilities, they were immune from damage actions although they were charged with having acted mistakenly or even maliciously. The theory justifying immunity from damage claims, we thought, was that the public interest in the unfettered exercise of discretionary duties such as legislating, adjudicating, rule-making or budgeting was so paramount that it should be performed free of the fear that either the motivation of the responsible officials or the correctness of their decisions could later be called into question in a suit for damages.

We recognized that not all government officials enjoyed such an unqualified immunity, and that some governmental officials were immune when performing certain duties but not immune when performing others. In this case the acts complained of resulted in Skehan's discharge during the term of his contract. Each defendant acted within the scope of his official statutory authority, and the decision to terminate Skehan's employment was in essence adjudicatory. In making the adjudication the defendants committed a procedural legal error of constitutional dimensions. But we believed that neither that error nor their motivation could be called into question in damage actions because governmental officials entrusted with adjudicatory responsibilities enjoyed, when discharging such duties, and unqualified immunity. *See Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

We did not believe that *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), had overruled what we thought was a settled principle that the immunity of some government officials, and specifically nonjudicial government officials performing adjudicatory functions, was unqualified. It was our impression that *Scheuer v. Rhodes* recognized a qualified immunity for governmental officials generally. Even

governmental officials not performing discretionary duties such as legislating, adjudicating, rule-making or budgeting were immune if they acted within the scope of their official responsibilities in good faith and with probable cause. We perceived the purpose of the remand in *Scheuer v. Rhodes* to be two-fold. First, the Court needed a record to determine the nature of the duties being performed by each of the defendants. Second, if those duties were not such as would cloak a given defendant with an unqualified immunity, the Court needed a record to determine whether the defendant acted within the scope of his official responsibility in good faith and with probable cause.

*Wood v. Strickland, supra*, demonstrates that we erred in assuming that there still existed an unqualified, common law immunity covering nonjudicial state government officials performing adjudicatory functions. The question before the Court was the immunity of school board members for a disciplinary suspension. The defendants had the official responsibility for making the adjudication, and they made a procedural error of constitutional dimensions. The Court held:

> [I]n the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. 420 U.S. at 322, 95 S.Ct. at 1001.

Functionally, the school board members adjudicating a student discharge and the state college officials adjudicating a faculty termination are identically situated. In the light of *Wood v. Strickland, supra*, we must now recognize that what we thought was an unqualified privilege is in truth something less broad. While we can determine on the present record that the defendants were performing nonjudicial adjudicatory

functions within the scope of their official responsibilities, we cannot determine that they met the *Wood v. Strickland* test.

 The defendants urge that the district court finding, referred to in our prior opinion, 501 F.2d at 43 n. 8, that the constitutional deprivation was technical in nature and not the product of bad faith, suffices to establish a qualified immunity. We reject this contention because at best the finding would satisfy only one of the two conditions of immunity established by *Wood v. Strickland.* A nonjudicial adjudicating official must act without malice. But the inquiry does not end there. He can be held liable for damages if he knew or reasonably should have known that the action he took would violate the constitutional rights of the party affected. There was no finding with respect to the defendants' knowledge or the reasonableness of their belief in the legal necessity for a pre-termination hearing. Moreover, in our prior review, since we assumed that we were dealing with an unqualified privilege, we had no occasion to pass upon the strength of the evidence supporting the district court's finding of good faith. Finally, since the Supreme Court has announced what we consider to be a departure from the settled prior law on governmental immunity in this circuit, we deem it appropriate that the district court be given an opportunity to reconsider both qualifications to the defendants' immunity.

Several questions not addressed by the Supreme Court in *Wood v. Strickland* will of necessity arise on remand in this case. These include which side has the burden of going forward with evidence and which side has the burden of proof on the two qualifications to the defendants' immunity. We find guidance on these issues in the Court's opinion in *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), *vacating and remanding* 493 F.2d 507 (5th Cir. 1974). There the Court tacitly approved in part a charge submitting to the jury the issue of a governmental official's immunity.[15] The Court held that the jury was improperly instructed with respect to petitioner O'Connor's reasonable belief in the constitutionality of his actions,[16] but implied that the malice instruction was correct. The charge on malice is set forth in full in Judge Wisdom's opinion for the Fifth Circuit, 493 F.2d at 527. The issue was submitted to the jury not as an element of the plaintiff's case, but as a defense which O'Connor, the official, had by a preponderance of the evidence the burden of sustaining. Although *O'Connor v. Donaldson* is not definitive, it suggests that the qualifications to immunity announced in *Wood v. Strickland* are matters of defense. *See* 422 U.S. at 576–77, 95 S.Ct. 2486; *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Bryan v. Jones,* 530 F.2d 1210, 44 U.S.L.W. 2521 (5th Cir. 1976) (en banc).

 Following the remand in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Court did not reach the issue of official immunity, the Second Circuit held that federal police officers were not immune from suit, but had a defense, on which they would have the burden of proof, that they acted with probable cause, or in good faith and with a reasonable belief in the legality of their actions. *See* 456 F.2d 1339, 1347–48 (2d Cir. 1972). In *Safeguard Mutual Insurance Co. v. Miller,* 472 F.2d 732 (3d Cir. 1973), this court adopted the same approach, holding that since good faith was a matter of defense it could not be determined on a Rule 12(b)(6) motion. *Accord, Fidtler v. Rundle,* 497 F.2d 794 (3d Cir. 1974). *Wood v. Strickland* and *O'Connor v. Donaldson* appear not to have made any change in the law in this respect. We therefore hold that in § 1983 actions the

---

**15.** This charge applied both to the common law defense of good faith raised by O'Connor and to the question of official immunity. *See* 493 F.2d at 527, 530 & n. 57.

**16.** This error induced the Court to vacate the judgment and remand for reconsideration in light of *Wood v. Strickland.*

burden is on the defendant official claiming official immunity to come forward and to convince the trier of fact by a preponderance of the evidence that, under the standards of *Wood v. Strickland,* official immunity should attach. On remand the district court must determine whether the defendants met their burden of establishing (1) that they did not know and reasonably need not have known that depriving Skehan of a pretermination hearing violated due process, and (2) that they acted without malicious intention to deprive him of his constitutional rights or cause him to suffer other injury. Whether those determinations can be made on the present record, or can be made in a motion for summary judgment under Rule 56, Fed.R.Civ.P., are questions we leave to the district court in the first instance. *See Economou v. United States Department of Agriculture,* 535 F.2d 688, at 696 (2d Cir. 1976).

While we can give guidance to the district court as to where various burdens lie on the *Wood v. Strickland* qualifications, we are less confident of our ability to suggest by what criteria the reasonableness of the several defendants' lack of knowledge of due process requirements should be measured. The district court will be required to inquire into the status and responsibility of each individual defendant and to determine whether, for example, a trustee should be held responsible for the same level of knowledge of constitutional rights as a college president or a commissioner of education. The determination may turn on the relative availability to each defendant of counsel, as well as the relative certainty of the legal issue, a criterion to which the *Wood v. Strickland* Court expressly adverted. 420 U.S. at 322, 95 S.Ct. 1612. The federal courts will be entering largely unchartered waters here, for the pre-existing rule of unqualified official immunity meant that very little if any case law was developed with respect to standards of liability for negligent mistakes of law by persons making nonjudicial adjudications. Cf. *Pa-*

*ton v. LaPrade,* 524 F.2d 862, 872–73 (3d Cir. 1975).

*O'Connor v. Donaldson* describes *Wood v. Strickland* as a "decision on the scope of the qualified immunity possessed by state officials . . . ." 422 U.S. at 577, 95 S.Ct. at 2494. Since that decision, however, the Court clarified the picture by its holding in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4250 (1976), that the common law unqualified immunity of judicial officers remains undisturbed. Thus *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966) (en banc), which overruled *Picking v. Pennsylvania R.R.,* 151 F.2d 240 (3d Cir. 1945), still governs with respect to judicial officers. But non-judicial, executive branch state officials can be sued for damages and must, if a violation of constitutional rights is found, defend on the grounds announced in *Wood v. Strickland.*[17]

### III. *The Status of Bloomsburg State College*

In our earlier opinion we directed the district court on remand to determine the governmental status of Bloomsburg State College. 501 F.2d at 43, 45. Between the date of argument in this court and the date our opinion was filed, the Pennsylvania Commonwealth Court decided *Brungard v. Hartman,* 12 Pa.Cmwlth. 477, 315 A.2d 913 (1974), which holds that state colleges such as Bloomsburg State College are agencies of the Commonwealth for which it claims sovereign immunity. That case was not called to our attention before our opinion was filed. It appears dispositive of the sovereign immunity issue. Thus it is clear in a case of this type that a back pay award cannot be made out of the college treasury, and that an award of attorney's fees against the college can only be made as costs for obduracy in this litigation.

### IV. *Conclusion*

Our prior judgment will be vacated. The judgment of the district court will be vacat-

---

**17.** Whether an executive branch official enjoys judicial immunity will of course be determined by the nature of his functions, and not by the label that is attached to them.

ed and the case will be remanded for findings of fact:

1. As to the nature of the interest created under Pennsylvania law by article 5(e) of the Statement of Policy for Continuous Employment and Academic Freedom at Bloomsburg State College; [18]

2. As to whether the decision not to renew Skehan's contract after 1970–71 was based on his stands on campus issues with which the administration disagreed.

If Skehan's only contract right expired by its terms at the end of the 1970–71 academic year, and there was no first amendment violation, a back pay award against the individual defendants, covering the 1970–71 period, must be considered. The court should then make findings of fact with respect to the immunity of each defendant in conformance with this opinion. If either the article 5(e) claim or the first amendment claim should be decided in Skehan's favor, the court should consider the award of back pay to date against the individual defendants, and also prospective reinstatement (as to which there is no immunity problem), at least until appropriate college termination procedures have taken place. We also call the district court's attention to the Supreme Court's recent decision in *Bishop v. Wood,* —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684, 44 U.S.L.W. 4820 (1976), a decision considering or perhaps reconsidering the scope of the protection afforded public employment by the due process clause. We leave it to the district court in the first instance to decide whether or to what extent that decision bears upon this litigation. We also instruct the district court to consider whether an award of attorney's fees would be appropriate against any of the individual defendants for bad faith, vexatious, wanton or oppressive conduct both prior to and during the course of this litigation, and against the college for such conduct subsequent to the commencement of the litigation.

18. *See* 501 F.2d at 45.