**James CREWS, Plaintiff,**

v.

**Metro PETROSKY, Jr., Clerk of Courts, Washington, Penna.; Walter W. Gregory, Court Administrator, Washington, Penna., Defendants.**

Civ. A. No. 80–283.

United States District Court,
W. D. Pennsylvania.

March 19, 1981.

James Crews, pro se.

Grayce R. Kovacs, Charleroi, Pa., for Metro Petrosky, Jr.

Joseph P. Moschetta and Kevin A. Koss, Washington, Pa., for Walter W. Gregory.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

Plaintiff, James Crews, a prisoner at the State Correctional Institution at Huntingdon, Pennsylvania, instituted this civil action pursuant to 42 U.S.C. § 1983 against Metro Petrosky, Jr., Clerk of Courts of Washington County, Pennsylvania, and Walter W. Gregory, Court Administrator of Washington County. Crews alleges that, under color of state law, defendants violated his constitutionally protected right of access to the courts.[1] Plaintiff seeks damages in excess of ten thousand dollars and a declaratory judgment. Jurisdiction is predicated on 28 U.S.C. § 1343(3).

All parties have moved for summary judgment and for the reasons set forth below, the motion of Gregory will be granted, but the motions of Petrosky and Crews will be denied.

James Crews was charged with armed robbery, and tried in the Court of Common Pleas of Washington County, Pennsylvania.

Following a guilty verdict, plaintiff was sentenced to a term of imprisonment of eight to eighteen years on September 25, 1978. On or about August 30, 1979, plaintiff filed a petition for relief under the Post-Conviction Hearing Act. Pa.R. Crim.P., Rules 1501–1506. On January 4, 1980, the petition was denied by order of President Judge Charles G. Sweet of the Court of Common Pleas of Washington County.[2]

Crews then manifested a desire to appeal the order to the Superior Court of Pennsylvania and prepared a notice of appeal. The notice was mailed to defendant, Metro Petrosky, Jr., Clerk of Courts of Washington County on January 17, 1980. Crews also filed a motion to proceed in forma pauperis, an affidavit of poverty and a proof of service. These papers were received by the Office of Clerk of Courts on or about January 22, 1980, stamped and filed on that date.

Plaintiff contends that, sometime in late January of 1980, after discovering the notice of appeal had not been filed with the Prothonotary of the Superior Court, he wrote to Petrosky by certified letter on February 7, 1980, demanding an explanation for the delay. A copy of this letter was also mailed, according to plaintiff, to Walter W. Gregory, Court Administrator of Washington County. A copy of the letter, addressed to the Clerk of Courts of Washington County, is attached to plaintiff's amended complaint.[3]

In the original complaint, Crews alleges that defendants were engaged in an ongoing violation of plaintiff's constitutional rights because they refused to file the notice of appeal "just because plaintiff is a prisoner." Defendants answered by stating

---

1. Plaintiff also alleges that the delay in filing his appeal constituted cruel and unusual punishment in violation of the 8th Amendment.

2. Plaintiff's petition was denied for failure to state sufficient grounds upon which relief could be granted, as well as for refusing to cooperate with counsel.

3. Although such documents do not comply with the requirements of Rule 56(e) of the Fed. R.Civ.P., they may be considered in ruling on a motion for summary judgment, since plaintiff is proceeding *pro-se. Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, plaintiff's letter to the Clerk of Courts does not, in our view, establish personal knowledge of either defendant.

that the notice had in fact been docketed in the appellate court as of March 18, 1980, and the record was transmitted to the Superior Court on March 26, 1980.

Plaintiff then filed an amended complaint contending that defendants had "willfully, knowingly and maliciously" delayed filing the notice to deny him access to the courts since the appeal could not be heard by the Superior Court during the April term of 1980. Instead, plaintiff asserts, the appeal could not be heard until the November term of 1980, at the earliest.[4]

## II. *The Motion of Walter W. Gregory for Summary Judgment*

█ Walter W. Gregory, Court Administrator of Washington County, contends that summary judgment is required because he had no authority to accept, process or docket appeals. Plaintiff, on the other hand, rejoins that the Administrator of Courts "is responsible to make sure all documents received by the Clerk of Courts receive immediate attention." He argues that Gregory may be liable under 42 U.S.C. § 1983 since the letter of February 4, 1980, was mailed and received by him.

For purposes of defendant's motion for judgment, we must view the facts in the light most favorable to the non-moving party, in this case the plaintiff. We therefore assume that Crews mailed a copy of the letter of February 4, 1980 to defendant. We further assume that Gregory read the letter, and therefore was aware that the notice of appeal had not been filed. Nevertheless, we conclude that the Court Administrator did not possess the authority to process or expedite the filing of plaintiff's appeal.

The responsibilities of a court administrator in Pennsylvania are outlined in the order of the Supreme Court of Pennsylvania, signed by Chief Justice Benjamin R. Jones, and dated December 9, 1975.[5] It is evident from that order, as well as from the title of the office, that the duties of a court administrator are essentially administrative. An administrator is an employee of the court, and his duties involve the day-to-day management of the business of the court.

There is no evidence that a court administrator has any authority to accept, stamp, file or transmit notices of appeal to an appellate court in Pennsylvania. Those duties, pursuant to Rule 905 of the Pennsylvania Rules of Appellate Procedure, are imposed on the clerk of courts.[6] Moreover, a clerk of courts is an elected official, with sole responsibility for the internal functioning of the office. There is no evidence of record to indicate that a court administrator may demand that a clerk process an appeal under any particular timetable.

We therefore conclude that James Crews has failed to state a claim against Walter W. Gregory pursuant to 42 U.S.C. § 1983. Even if we assume that some delay occurred in filing plaintiff's appeal, which transgressed a constitutional right, there is no indication that this defendant possessed any authority to correct the delay.[7]

## III. *The Motion of Metro Petrosky, Jr. for Summary Judgment*

Metro Petrosky, Jr., Clerk of Courts of Washington County, denies that he intentionally neglected or refused to file Crews' notice of appeal. He admits that the docu-

---

4. Until 1980, the Superior Court of Pennsylvania sat in Pittsburgh in April and November of each year for terms of one week. Recently, however, the Court sits in Pittsburgh nearly every month, as the caseload requires.

5. A copy of the order is attached to Gregory's motion for summary judgment.

6. Rule 905 of the Pennsylvania Rules of Appellate Procedure provides as follows:
   (a) Filing with Clerk. Two copies of the notice of appeal and the proof of service required by Rule 906 (service of notice of appeal), shall be filed with the clerk of the lower court.

Upon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, . . .
   (b) Transmission to appellate court. The clerk shall immediately transmit to the prothonotary of the appellate court named in the notice of appeal a copy of the notice of appeal showing the date of receipt, the related proof of service and a receipt showing collection of any docketing fee . . . .

7. We need not address the remaining contentions of defendant.

ments were received by his office on or about January 22, 1980. He insists, however, that he had no knowledge of this matter until March 12, 1980, when served by plaintiff with a motion for trial by jury in the instant action. Defendant states that he then diligently investigated the matter and immediately transmitted the record to the Superior Court for docketing.

Petrosky urges that summary judgment is appropriate for two reasons. First, so long as he did not willfully violate Crews' constitutional rights, he is immune from liability for money damages under the doctrine of quasi-judicial immunity. Second, no constitutional violation occurred since plaintiff's appeal could not have been heard by the Superior Court during the April term even if processed promptly. We will address each contention.

### A. Quasi-Judicial Immunity

The Clerk of Courts first contends that relief is precluded by the doctrine of quasi-judicial immunity. He asserts that so long as he acted in good faith in performing his court-related duties, no cause of action exists under the Civil Rights Act of 1871.

We disagree. The immunity of certain quasi-judicial officials derives not from mere association with the judicial process, but because they exercise discretion akin to the judiciary. Similar to judges, these officials require the insulation of immunity to ensure that discretionary duties can be exercised without threat of harassment or vexation. *See Carter v. Carlson*, 447 F.2d 358 (D.C.Cir.1971). But when an official does not exercise judicial or quasi-judicial discretion, courts have refused to extend the protection of absolute immunity. *See Skehan v. Bd. of Trustees of Bloomsburg St. College*, 538 F.2d 53 (3d Cir. 1976) (en banc); *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972). As a result, absolute immunity has been sparingly applied to suits under 42 U.S.C. § 1983. To do otherwise would effectuate a judicial repeal of the clear Con-

gressional intent embodied in the statute. *Jobson v. Henne*, 355 F.2d 129, 133–134 (2d Cir. 1966); *Hoffman v. Halden*, 268 F.2d 280, 300 (9th Cir. 1959).

Most courts have held that a clerk of courts is not clothed with absolute quasi-judicial immunity for duties which are essentially ministerial. *McCray v. Williams, supra; Williams v. Wood*, 612 F.2d 982 (5th Cir. 1980); *McLallen v. Henderson*, 492 F.2d 1298 (8th Cir. 1974); *Allen v. Dorsey*, 463 F.Supp. 44 (E.D.Pa.1978).[8] However, state court officials, acting within their official capacities, are entitled to a qualified immunity. *See Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1974); *Skehan v. Bd. of Trustees of Bloomsburg St. College, supra*, 538 F.2d at 60–62. Qualified immunity is available under 42 U.S.C. § 1983 where an official (1) did not know or reasonably could not have known that the action, within the sphere of official responsibility, violated the constitutional rights of another person; and (2) acted without malicious intent to cause deprivation of such rights or other injury. *Wood v. Strickland, supra*, 420 U.S. at 322, 95 S.Ct. at 1000.

A number of courts have held that qualified immunity applies to clerks of state courts, when accused of ignoring duties in violation of 42 U.S.C. § 1983. *McCray v. Maryland, supra*, 456 F.2d at 5; *Williams v. Wood, supra*, 612 F.2d at 985; *McLallen v. Henderson, supra*, 492 F.2d at 1300. We therefore conclude that Metro Petrosky is imbued with a qualified immunity in an action for damages under Section 1983.

Qualified immunity does not, however, provide a basis for dismissing the action at this juncture. The defense of qualified immunity of state officials is a matter which must be raised at trial. *Skehan v. Bd. of Trustees of Bloomsburg St. College, supra*, 538 F.2d at 61. Thus, Metro Petrosky has the burden to present evidence and convince the trier of fact by a preponder-

---

**8.** There is one exception to this rule, which is not here relevant. Clerks, and other state officials who perform ministerial functions, may obtain absolute immunity when acting under command of court decrees or explicit instructions of a judge. *Williams v. Wood*, 612 F.2d 982 (5th Cir. 1980); *Smith v. Martin*, 542 F.2d 688 (6th Cir. 1976).

ance of the evidence that, under the standards of *Wood v. Strickland,* such immunity is controlling. *Skehan, supra,* 538 F.2d at 61–62.[9]

## B. *Constitutional Infringement*

42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Petrosky argues that summary judgment is appropriate because the delay which occurred in filing plaintiff's appeal did not transgress constitutionally protected rights. Defendant cites the affidavit of Irma T. Gardner, Deputy Prothonotary of the Superior Court of Pennsylvania, which is attached to his motion papers. The affidavit indicates that, even if defendant had filed the notice with the Superior Court one day after receipt by his office, Crews' appeal would have been considered by the Court during the November term, rather than the April term of 1980. Petrosky urges therefore the delay did not affect plaintiff's constitutional right of access to the courts.

We conclude that summary judgment is inappropriate because material issues of fact are extant with respect to the length of the delay and to what extent the delay may have affected Crews' right of access to the courts.

■ We note that the right of access to the courts is protected by the due process clause of the 14th Amendment. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[10] An allegation that a clerk of state court has negligently delayed the filing of a petition for appeal, and that the delay has interferred with an individual's right of access to the courts, may state a cause of action under 42 U.S.C. § 1983. *See, McCray v. Maryland, supra.* On the record before us we cannot say that, as a matter of law, the delay in filing Crews' notice of appeal did not interfere with his federally protected constitutional rights.

The affidavit of Irma T. Gardner admittedly states that plaintiff's notice of appeal was docketed with the Prothonotary of the Superior Court on March 18, 1980. The affidavit also states that, even if the appeal had been docketed with the Prothonotary one day after receipt by defendant's office, the case would not have been listed for consideration prior to the November session. Finally, defendant's affidavit states that the record of the lower court was "transmitted to and received by the Prothonotary of the Superior Court on March 26, 1980."

The evidence is conflicting however. Plaintiff's Exhibit 3 is a copy of a letter from Irma Gardner that plaintiff received on September 10, 1980. The letter advises that plaintiff's brief was due by October 7, 1980, and appellee's brief was due by November 7, 1980. It also indicates that the record of the lower court was received by her office on August 29, 1980, not March 26, 1980. Plaintiff's Exhibit 6 is a second letter which Crews received from Irma Gardner dated November 10, 1980. This letter indicates that plaintiff's original appeal was to

---

**9.** Petrosky has the burden of establishing (1) that he did not know, and reasonably could not have known, that any delay in filing Crews' appeal would violate his due process rights, and (2) that he acted without malicious intent to deprive plaintiff of his constitutional rights or to cause other injury. *Skehan, supra,* 538 F.2d at 62.

**10.** The right of access to the courts is also "part of the right to petition protected by the First Amendment." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

be consolidated with two other appeals to which Crews was a party. His original appeal therefore followed the new briefing schedule, with appellant's brief due on December 20, 1980, and appellee's brief due on January 19, 1981.[11]

We cannot determine, based on the evidence before this court, the correct date on which the record was filed in the appellate court and whether, assuming the date of August 29, 1980, to be accurate, the November term was bypassed due to the absence of the record.

The evidence is also ambiguous as to when the Clerk of Courts of Washington County filed plaintiff's appeal with the Superior Court. More importantly, it is unclear to what extent the delay in filing the notice may have delayed the scheduling of his appeal before the Superior Court.

There is little question that, even without delay, plaintiff's appeal would not have been heard by the Superior Court during the April term of 1980. But questions remain as to whether, assuming the Clerk of Courts had transmitted the notice of appeal "immediately" as required by Rule 905(b) of the Pennsylvania Rules of Appellate Procedure, plaintiff's appeal would have been listed for argument and adjudicated without consolidation with two other cases and prior to January 19, 1981.

We do not here intimate that every delay in filing an appeal, which to some extent postpones appellate review, is sufficiently serious to constitute a violation of an individual's right of access to the courts.[12] We do conclude, however, that the task of determining whether this delay is constitutionally infirm must ultimately rest with a jury. In light of the ambiguities which exist in the instant record, we cannot conclude as a matter of law that no abuse of plaintiff's constitutional rights may have occurred, although plaintiff's evidence is meager at best.

Because material issues of fact exist as to whether plaintiff's rights under 42 U.S.C. § 1983 have been violated, the motion of Metro Petrosky, Jr., for summary judgment will be denied. The motion of plaintiff for judgment must also be denied for the same reason.

---

**11.** Plaintiff's original appeal (239 Pittsburgh, 1980) was consolidated with two other appeals (875 and 988 Pittsburgh, 1980) which plaintiff filed in September and October of 1980. All three appeals arise from orders issued by Chief Judge Sweet, with respect to plaintiff's trial for armed robbery.

**12.** There are a number of factors to be considered in determining whether a delay in an appeal amounts to a violation of due process. See *Rheuark v. Shaw*, 628 F.2d 297, 303 (5th Cir. 1980).